Anthony Paduano
Katherine B. Harrison
Willard R. Knox
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
NJK HOLDINGS CORP., DCC VENTURES,   :
LLC, NASSER J. KAZEMINY, and        :
THE TRIOMPHE INVESTORS, LLC,        :
                                    :
              Plaintiffs,           :
                                    :      Case No. 11-cv-6946 (DLC)
v.                                  :             ECF Case
                                    :
FIRST LONG ISLAND INVESTORS, LLC,   :
FLI DEEP MARINE LLC, BRESSNER       :
PARTNERS LTD., LOGAN LANGBERG,      :
HARLEY LANGBERG, and JEFFREY LANGBERG, :
                                    :
              Defendants and        :
              Counterclaimants,     :
                                    :
v.                                  :
                                    :
NJK HOLDINGS CORP., DCC VENTURES,   :
LLC, NASSER J. KAZEMINY, THE TRIOMPHE :
INVESTORS, LLC, NADER KAZEMINY, OTTO :
CANDIES, JR., OTTO CANDIES, III, OTTO :
CANDIES, LLC, JOSEPH J. GRANO, JR. and :
CENTURION HOLDINGS LLC,             :
                                    :
              Counterclaim Defendants. :
---------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
AS TO FIRST LONG ISLAND INVESTORS, LLC
<u>AND COUNTS I, IV AND V AS TO ALL DEFENDANTS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

Preliminary Statement ................................................................................ 1

ARGUMENT ................................................................................................ 3

Legal Standard for Motions to Dismiss ......................................................... 3

I.   PLAINTIFFS HAVE STATED NO CLAIM AGAINST FIRST LONG ISLAND INVESTORS, LLC ................................................................. 5

II.  PLAINTIFFS CANNOT SEEK A DECLARATORY JUDGMENT ...................... 8

    A.   Plaintiffs' Request Violates the Principle of Comity ................................. 9

    B.   Plaintiffs Cannot Meet the Standard for Declaratory Relief .................... 10

III. PLAINTIFFS HAVE NO CLAIM FOR ABUSE OF PROCESS ....................... 12

    A.   Commencing Litigation Is Not An Abuse of Process ............................... 13

    B.   Engaging in Legitimate Discovery Is Not An Abuse of Process ............. 14

IV. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER RICO ................. 17

    A.   Defendants Are Not An Enterprise ....................................................... 17

    B.   Plaintiffs Have Not Properly Pleaded Defendants' Alleged "Racketeering Activity" ...................................................................... 18

        1.   Plaintiffs Have Not Properly Pleaded a Mail Fraud Claim .............. 19

        2.   Plaintiffs Have Not Properly Pleaded a Wire Fraud Claim ............. 21

        3.   Plaintiffs Have Not Properly Pleaded Extortion ............................ 22

    C.   Plaintiffs Have Not Properly Pleaded a Pattern of Racketeering ........ 23

Conclusion .............................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

Allstate Ins. Co. v. Bogoraz,
No. 10–CV–5286 (SJF) (ETB), 2011 WL 2421045 (E.D.N.Y. June 10, 2011)......... 17, 19

Anatian v. Coutts Bank (Switz.) Ltd.,
193 F.3d 85 (2d Cir. 1999) ........................................................................................ 20

Ann-Margret v. High Soc'y Magazine, Inc.,
498 F. Supp. 401 (S.D.N.Y 1980) ......................................................................... 15, 16

Annodeus, Inc. v. Ciarkowski,
04 Civ.1633 DLC 2004 WL 2066937 (S.D.N.Y. Sept. 16, 2004) .................................. 24

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ...................................................................................... 4, 5, 18

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) .................................................................................................... 3

Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale
Classroom Teachers Ass'n, Inc.,
38 N.Y. 2d 297 (1975) ........................................................................................ 15, 16

Carr v. Equistar Offshore, Ltd.,
No. 94 Civ. 5567 (DLC) 1995 WL 562178 (S.D.N.Y. Sept. 21, 1995) .......................... 21

Chiste v. Hotels.com L.P.,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)...................................................................... 9n, 11

Chrysler Corp. v. Fedders Corp.,
540 F. Supp. 706 (S.D.N.Y. 1982) .............................................................................. 13

Conte v. Newsday, Inc.
703 F. Supp. 2d 126 (E.D.N.Y. 2010).......................................................................... 23

Cont'l Cas. Co. v. Coastal Sav. Bank,
977 F.2d 734 (2d Cir. 1992) ....................................................................................... 11

Creed Taylor, Inc. v. CBS, Inc.,
718 F. Supp. 1171 (S.D.N.Y. 1989)............................................................................. 25

Curiano v. Suozzi,
63 N.Y.2d 113 (1984) ........................................................................................... 13, 15

Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,
758 F. Supp. 2d 153 (E.D.N.Y. 2010),
aff'd sub nom.,11-149-CV, 2011 WL 4839089 (2d Cir. Oct. 13, 2011) ........................ 19

Decker v. Massey–Ferguson Ltd.,
681 F.2d 111 (2d Cir. 1982) ................................................................... 19, 20

DeFalco v. Bernas,
244 F.3d 286 (2d Cir. 2001) ................................................................... 17, 24

DeSilva v. North Shore-Long Island Jewish Health System, Inc.,
770 F. Supp. 2d 497 (E.D.N.Y. 2011)....................................... 18n, 19, 20, 22

Dow Jones & Co., Inc. v. Harrods, Ltd.,
237 F. Supp. 2d 394 (S.D.N.Y. 2002)
aff'd., 346 F.3d 357 (2d Cir. 2003), .................................................................. 9n

Edmonds v. Seavey,
No. 08 Civ. 5646 (HB), 2009 WL 4404815 (S.D.N.Y. Dec. 2, 2009) ........................ 25n

Estate of Keys v. Union Planters Bank, N.A.,
578 F. Supp. 2d 629 (S.D.N.Y. 2008)........................................................ 12n

Feinman v. Bank of Delaware,
728 F. Supp. 1105 (D. Del. 1990) ................................................... 12n, 13n

First Capital Asset Management, Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004) ...................................................................... 18n

Fletcher v. Atex, Inc.,
68 F.3d 1451 (2d Cir. 1995) ......................................................................... 6

Garber v. Legg Mason, Inc.,
347 Fed. Appx. 665 (2d Cir. 2009) ............................................................... 3

Geyer v. Ingersoll Publ'ns Co.,
621 A.2d 784 (Del. Ch. 1992)..................................................................... 6

GICC Capital Corp. v. Technology Finance Group, Inc.,
67 F.3d 463 (2d Cir. 1995) ....................................................................... 24

Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,
No. 06-cv-1260 (KAM), 2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009)............................ 16

Gunn v. Palmieri,
No. 87 CV 1418, 1989 WL 119519 (E.D.N.Y. Sept. 29, 1989),
aff'd, 904 F.2d 33 (2d Cir. 1990),
cert. denied, 498 U.S. 1049 (1991) .................................................................. 21

H.J. Inc. v. Northwestern Bell Tel. Co.,
492 U.S. 229 (1989) ....................................................................................... 24

In re Digital Music Antitrust Litigation,
2011 WL 2848195 (S.D.N.Y. July 18, 2011) ..................................................... 7

In re Foxmeyer Corp.,
290 B.R. 229 (Bankr. D. Del. 2003) .................................................................. 6

Jacques v. DiMarzio, Inc.,
216 F. Supp. 2d 139 (E.D.N.Y. 2002) ............................................................. 13

Jalili v. Xanboo Inc.,
11 CIV. 1200 DLC, 2011 WL 4336690 (S.D.N.Y. Sept. 15, 2011) ......... 6, 7, 8

Karagozian v. Coty US, LLC,
No. 10 Civ. 5482 (RMB), 2011 WL 536423 (S.D.N.Y. Feb. 10, 2011) ........... 20

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) .......... 26

Kelly v. Evolution Mkts., Inc.,
626 F. Supp. 2d 364 (S.D.N.Y. 2009) ............................................................. 11

Kimm v. Lee,
2005 WL 89386, 04 Civ. 5724 (Jan. 13, 2005)
aff'd sub nom, Kimm v. Chang Hoon Lee & Champ, Inc.,
196 F. App'x 14 (2d Cir. 2006) ........................................................ 20, 23, 25

Kiobel v. Royal Dutch Petroleum Co.,
621 F.3d 111(2d Cir. 2010),
reh'g denied, 642 F.3d 268 (2d Cir. 2011),
cert. granted, 10-1491, 2011 WL 4905479 (U.S. Oct. 17, 2011) ................. 3, 4

Kredietbank, N.V. v. Joyce Morris, Inc.,
Civ. A. No. 84–1903, 1986 WL 5926 (D.N.J. Jan. 9, 1986),
aff'd, 808 F.2d 1516 (3d Cir. 1986).................................................................. 20

Leogrande v. Leogrande,
799 F. Supp. 1354 (E.D.N.Y. 1992)................................................................... 23

Levine v. Torino Jewelers, Ltd.,
No. 05 Civ. 3159 (DLC), 2006 WL 709098 (S.D.N.Y. March 22, 2006) ........................ 24

Mann v. Oppenheimer & Co.,
517 A.2d 1056 (Del. 1986) ....................................................................................... 14n

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993) ........................................................................................ 22

Moore v. PaineWebber, Inc.,
189 F.3d 165 ............................................................................................................... 19

NetJets Aviation, Inc. v. LHC Communications, LLC,
537 F. 3d 168 (2d Cir. 2008) ......................................................................................... 7

O'Brien v. Alexander,
898 F. Supp. 162 (S.D.N.Y. 1995)
aff'd in part, vacated on other grounds, 101 F.3d 1479 (2d Cir. 1996) ......................... 15

Pagliarulo v. Pagliarulo,
30 A.D.2d 840, 293 N.Y.S.2d 13 (2d Dep't 1968) ........................................................ 13

Park S. Associates v. Fischbein,
626 F. Supp. 1108 (S.D.N.Y. 1986) ............................................................................. 23

Porcelli v. United States,
404 F.3d 157 (2d Cir. 2005) ........................................................................................ 19

Reilly v. Natwest Mkts. Group, Inc.,
178 F. Supp. 2d 420 (S.D.N.Y. 2001) .......................................................................... 13

Riddell Sports Inc. v. Brooks,
872 F. Supp. 73 (S.D.N.Y. 1995) ........................................................................... 12, 13

Sforza v. City of New York,
No. 07 Civ. 6122 (DLC), 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009) ................... 12, 13

Smith v. Delta Intern. Machinery Corp.,
893 N.Y.S. 2d 580 (App. Div.  2d Dept.  2010) ............................................................. 8

Spool v. World Child Int'l Adoption Agency,
520 F.3d 178 (2d Cir. 2008) ........................................................................................ 21

Technology in Partnership, Inc. v. Rudin,
No. 10 Civ. 8076 (RPP), 2011 WL 4575237 (S.D.N.Y. Oct. 4, 2011) ........................... 18

Torquay Corp. v. Radio Corp. of Am.,
2 F. Supp. 841 (S.D.N.Y. 1932) ...................................................................... 10

Unit, Inc. v. Kentucky Fried Chicken Corp.,
304 A.2d 320(Del. Super. Ct. 1973), .......................................................... 14n

United States v. Funds Held in the Name of or for the Benefit of Wetterer,
210 F.3d 96 (2d Cir. 2000) ............................................................................ 6

United States v. Giovanelli,
807 F. Supp. 351(S.D.N.Y. 1992),
rev'd on other grounds, 998 F.2d 116 (2d Cir. 1993) ................................. 9, 10

United States v. Rogers,
9 F. 3d 1025(2d Cir.1993),
cert. denied 115 S. Ct. 95 (1994) ................................................................ 21

United States v. Turkette,
452 U.S. 576 (1981) .................................................................................... 18n

Vista Food Exch., Inc. v. Joyce Foods, Inc.,
No. 96 CIV. 0012 (MBM), 1996 WL 122419 (S.D.N.Y. Mar. 20, 1996) ...................... 12n

Weaver v. James,
No. 10 Civ. 6609 (NRB), 2011 WL 4472062 (S.D.N.Y. Sept. 27, 2011) ........................ 21

Wilson v. Thorn Energy, LLC,
787 F. Supp. 2d 286 (S.D.N.Y. 2011)............................................................. 7

**Statutes**

6 Del.C. § 18-402 ......................................................................................... 8

18 U.S.C. § 1341 ........................................................................................... 18

18 U.S.C. § 1343 ........................................................................................... 18

18 U.S.C. § 1951 ............................................................................... 18, 22, 23

18 U.S.C. § 1961 ................................................................ 17, 18, 18n, 19, 24

18 U.S.C. § 1962(c) ........................................................................... 17, 18, 23

28 U.S.C. § 2201 ................................................................................ 9n, 10, 11

28 U.S.C. §  2202 ........................................................................................... 9n

NY Limited  Liability Company Law § 408 ...................................................... 8

**Rules**

Fed. R. Civ. P. Rule 8(a)(2) ............................................................................ 4

Fed. R. Civ. P. Rule 9(b) ........................................................... 19, 20, 21, 22

Fed. R. Civ. P. Rule 12(b)(6) ......................................................................... 1

Defendants FLI Deep Marine LLC ("FLI Deep Marine"), Bressner Partners Ltd. ("Bressner Partners"), and Logan Langberg, Harley Langberg, and Jeffrey Langberg (together, the "Individual Defendants") and First Long Island Investors, LLC ("First Long Island Investors") respectfully submit this Memorandum of Law in support of their motion pursuant to FRCP Rule 12(b)(6) to dismiss the Second Amended Complaint of NJK Holdings Corp., DCC Ventures, LLC, Nasser J. Kazeminy, and The Triomphe Investors, LLC (i) as to all Counts against First Long Island Investors; and (ii) as to Count I (Declaratory Judgment), Count IV (Abuse of Process) and Count V (Racketeer Influenced and Corrupt Organizations Act ("RICO")) as against all defendants.

## **Preliminary Statement**

Plaintiffs, controlling shareholders of Deep Marine Technology, Inc. ("DMT") who completely dominated DMT, acted in concert to loot and destroy that once-promising and profitable company for their own benefit.   When the minority shareholders of DMT – Defendants here – sought to find out what actually happened, to hold those responsible for DMT's demise accountable, and to assert the most basic rights of minority shareholders, Plaintiffs began a scorched-earth campaign against Defendants which included financial shenanigans, a bogus special committee "investigation," and an improper short-form squeeze-out merger to strip the minority shareholders of their DMT shares.   Plaintiffs' war against DMT's own minority shareholders culminated in DMT's bankruptcy filing, all in order to avoid the accountability sought by the minority shareholders in the Delaware Chancery Court.

The now-Chancellor of the Delaware Chancery Court called Kazeminy's tactics "slick"[1] and the United States Bankruptcy Court for the Southern District of Texas noted that Defendants had pleaded "a major corporate looting case" against Plaintiffs.[2] DMT's Trustee, who was hand-picked by Kazeminy in advance of the bankruptcy filing, agreed with the Texas Bankruptcy Court and filed his own complaint against Kazeminy and fellow controlling shareholders Otto Candies, Jr. and Otto Candies, III (the "Candies"), also alleging a major corporate fraud and looting case.  As a result of their clever legal tactics, Plaintiffs managed to avoid accountability.

The Trustee ultimately settled with Kazeminy and the Candies, over the objection of Defendants.  As part of the settlement, the Trustee went so far as to sell to Kazeminy and the Candies any actual or potential claims DMT had against Defendants for $12,500, without even giving Defendants the opportunity to bid more for those actual or potential claims.  Plaintiffs now allege that the potential claims they purchased for $12,500 are actually worth $50 million, the amount they seek in this lawsuit.  That would likely be news to the Trustee, who not only sold those claims for a pittance, but who had not alleged any bad behavior on the part of Defendants during the entire nearly two year bankruptcy case.  Kazeminy has wasted no time in asserting the frivolous claims now before the Court.

Having caused DMT's bankruptcy, Plaintiffs now attempt to use the bankruptcy stay as a shield and a sword.  In the Second Amended Complaint, Plaintiffs

---

[1]   See Transcript of November 2, 2009 Delaware Chancery Court Scheduling Conference, attached to the Declaration of Katherine B. Harrison (the "Harrison Decl.") as Exhibit A, at p. 15.

[2]   See Transcript of January 21, 2010 Temporary Restraining Order Hearing, attached to the Harrison Decl. as Exhibit B, at 41:14.

assert claims that they acquired by assignment from DMT's bankruptcy estate – although they do not name DMT as a party to this action – yet they object to Defendants asserting any claims arising from the events that led to DMT's demise and Plaintiffs' role in that demise.

Plaintiffs attempt to ratchet up their smear campaign by adding First Long Island Investors – an entity that played no role in any of this – as a defendant.  Plaintiffs assert in wholly conclusory fashion that "FLI [Deep Marine] is the alter ego of FLI Investors." (Second Amended Compl. ¶ 8)  Plaintiffs' attempt to embarrass and defame this entity is supported by no facts and should be rejected.

The Defendant minority shareholders, whose entire investment was wiped out by Plaintiffs, have spent three years and vast resources trying to hold Plaintiffs accountable for their actions in destroying DMT and recover the value of their investment.  Defendants welcome the opportunity to finally hold Plaintiffs responsible for their utter disregard for the law and their fiduciary duties to protect minority shareholders, and direct the Court to Defendants' Counterclaims, filed today, which seeks redress for Plaintiffs' wrongdoings.

## ARGUMENT

### Legal Standard for Motions to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the Court must accept well-pleaded factual allegations in the complaint as true, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Garber v. Legg Mason, Inc., 347 Fed. Appx. 665, 670 (2d Cir. 2009).  See also Kiobel v. Royal Dutch Petroleum Co., 621

F.3d 111, 191 (2d Cir. 2010) reh'g denied, 642 F.3d 268 (2d Cir. 2011) and cert. granted, 10-1491, 2011 WL 4905479 (U.S. Oct. 17, 2011).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court affirmed that Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.  The Court in Iqbal set out an approach to the complaint for the district court, in which the wheat (factual claims) is separated from the chaff (conclusory allegations):

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Id. at 1950.  Applying this framework to the facts set forth in Plaintiffs' Second Amended Complaint, it is apparent that Plaintiff's Second Amended Complaint is rife with conclusory allegations that simply do not pass muster under Iqbal.  For example, Plaintiffs allege without factual basis that Defendants abused this Court's process (notwithstanding that the action of which they complain is pending in another court) through "the suppression of evidence, the obstruction of justice and the assassination of . . . Plaintiffs' reputation." (Second Amended Complaint ¶ 88).  Even worse, Plaintiffs allege in one paragraph, devoid of facts, that "[u]pon information and belief, FLI is the alter ego of FLI Investors." (Second Amended Complaint ¶ 8).  Such "bare assertions" and "conclusory" statements "amount to nothing more than a formulaic recitation of the elements" and need not be considered true.  See Iqbal, 129 S. Ct. at 1949, 1951.  To the extent that there remain any well-pleaded, non-conclusory factual allegations in the

Second Amended Complaint, the operative inquiry is "whether they plausibly give rise to an entitlement to relief." See Iqbal, 129 S. Ct. at 1950.

Plaintiffs have utterly failed to plead a claim against First Long Island Investors or any valid claim for relief as to declaratory judgment, abuse of process or RICO.  Such claims therefore should be dismissed.

**POINT I**

**PLAINTIFFS HAVE STATED NO CLAIM
<u>AGAINST FIRST LONG ISLAND INVESTORS, LLC</u>**

Plaintiffs named First Long Island Investors as a party only upon the filing of their first Amended Complaint, dated November 10, 2011.  Indeed, that Plaintiffs added First Long Island Investors – an entity that has not been sued even once in its 28 years in existence – merely as an afterthought in order to harass and embarrass that entity is evidenced by Plaintiffs' utter failure to plead any allegations of fraud, or any direct allegations of wrongdoing by First Long Island Investors itself.  Rather, Plaintiffs make only conclusory reference – on "information and belief" – to First Long Island Investors as the "alter ego" of FLI Deep Marine.  <u>See</u> Second Amended Complaint ¶ 8.[3] Plaintiffs' factual support for this conclusion is that individuals who were officers of First Long Island Investors signed documents on behalf of FLI Deep Marine and made representations on behalf of FLI Deep Marine. (Second Amended Complaint, ¶ 8)  First Long Island Investors is the managing member of FLI Deep Marine and is not an investor in or the "parent" of FLI Deep Marine.  The two companies were formed for

---

[3] Having been directed by this Court to either oppose Defendants' Motion to Dismiss the first Amended Complaint or amend such Complaint, Plaintiffs have now added an allegation that FLI Deep Marine's Chairman and CEO is also the Chairman and CEO of First Long Island Investors.  <u>See</u> Second Amended Complaint ¶ 8.  As is detailed below, however, such an allegation of shared officers without more is insufficient as a matter of law to pierce the corporate veil.

different purposes, have less than one-third common ownership, maintain all corporate formalities, neither is a subsidiary of the other, their finances are not integrated, their assets are not commingled, and the principals treat the two entities as separate and distinct.  Plaintiffs do not allege otherwise.

To state a claim against First Long Island Investors, Plaintiffs must justify "piercing the corporate veil" between First Long Island Investors and FLI Deep Marine; otherwise, Plaintiffs' claims against First Long Island Investors must be dismissed.  See, e.g., Jalili v. Xanboo Inc., 11 Civ. 1200 (DLC), 2011 WL 4336690, *3 (S.D.N.Y. Sept. 15, 2011) (Cote, J.) (party seeking to hold parent company liable must "plead facts sufficient to overcome the presumption of separateness of a corporation").  Because FLI Deep Marine is incorporated in Delaware, this Court should apply Delaware law in determining whether Plaintiffs have sufficiently pleaded piercing the corporate veil (to hold First Long Island Investors liable).  See, e.g., United States v. Funds Held in the Name of or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000); Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995).  Notwithstanding the choice-of-law principles, however, New York and Delaware law both strongly disfavor piercing the corporate veil.

Delaware law prohibits piercing the corporate veil unless "there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner."  Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992).  See also, e.g., In re Foxmeyer Corp., 290 B.R. 229, 236 (Bankr. D. Del. 2003) (stating that the demonstration of fraud must "be found in the defendants' use of the corporate form," and must be distinct from the underlying cause of action alleged in the complaint—i.e., a party may not use its cause of action to "bootstrap" the required showing of fraud).

6

Similarly, this Court recently emphasized again the required pleading of fraud to overcome the presumption against piercing the corporate veil and sufficient to survive dismissal.

> Where the complaint relies on conclusory assertions devoid of facts from which it may be inferred both that a parent dominated the subsidiary's business and that the parent acted to defraud the plaintiff, the claim against the parent plead through the mechanism of piercing the corporate veil must be dismissed.

Jalili, 2011 WL 4336690 at *3.  The Second Circuit, applying Delaware law, "distilled the standard for an alter-ego piercing claim into a two-pronged test which asks '(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness.'" Wilson v. Thorn Energy, LLC, 787 F. Supp. 2d 286, 294 (S.D.N.Y. 2011) (Maas, J.) (quoting NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F. 3d 168 (2d Cir. 2008)).   Some of the factors to be considered by courts to determine if two entities are alter egos include whether the subsidiary corporation was solvent, whether corporate records were kept, whether corporate formalities were observed, whether finances were integrated, and whether assets were commingled.  Id. at 295; In re Digital Music Antitrust Litigation, 2011 WL 2848195, 21 (S.D.N.Y. July 18, 2011)(Preska, J.).

In the case at bar, the relationship between FLI Deep Marine and First Long Island Investors is even more attenuated than that of a parent and subsidiary corporation – First Long Island Investors is merely the managing member of FLI Deep Marine.  Plaintiffs make conclusory allegations that FLI Deep Marine "is the alter ego of FLI Investors [i.e., First Long Island Investors]," and that the management of First Long Island Investors "maintains complete domination and control over FLI [i.e., FLI Deep

Marine]." (Second Amended Complaint ¶ 8). However, even the alleged "domination" by the managing member of FLI Deep Marine is not sufficient to pierce the corporate veil. See Smith v. Delta Intern. Machinery Corp., 893 N.Y.S. 2d 580, 583 (App. Div. 2d Dept. 2010) (holding that managing member of company was not liable for alleged actions of the company even though, as managing member, he dominated the company). In fact, the statutory role of a managing member is to manage the affairs of the company, and it is not unusual for a managing member to "dominate and control" the LLC. See 6 Del.C. § 18-402; NY Limited Liability Company Law § 408 (McKinney 2011). Plaintiffs are required to allege more than "domination and control" in order to properly plead alter ego theories to justify piercing the corporate veil.

Plaintiffs do not allege that First Long Island Investors and FLI Deep Marine acted as a single economic entity, that either was insolvent, that dividends were paid to First Long Island Investors, that corporate records or other corporate formalities were deficient, or that the two entities mixed funds.

The "conclusory assertion that [the parent company] exercises 'dominion and control] over [the subsidiary] and that [the subsidiary] 'has no separate will of its own' does not support an inference that would justify disregard of the corporate form." Jalili, 2011 WL 4336690, *3. Therefore, the Court should dismiss all counts of the Second Amended Complaint against First Long Island Investors.

**POINT II**

**PLAINTIFFS CANNOT SEEK A DECLARATORY JUDGMENT**

In Count I of the Second Amended Complaint, Plaintiffs ask this Court to declare that "the claims set forth in the 'Proposed Amended Complaint' [i.e., the draft complaint of FLI Deep Marine to be filed in the Delaware Chancery Court] are. . .

8

unenforceable as a matter of law . . . and/or are derivative in nature and therefore cannot be pursued by Defendants." (Second Amended Complaint ¶ 71). However, at the time the Second Amended Complaint was filed, the United States District Court for the Southern District of Texas had issued an enforceable Order holding that causes of action in the Proposed Amended Complaint are direct claims, not derivative, and may be pursued by Defendants. See Deep Marine Holdings, et al. v. FLI Deep Marine, et al., Case No. 10-03026, Docket No. 149 (S.D. Texas, Oct. 14, 2011), attached as Exhibit C to the Harrison Declaration. On January 11, 2012, the District Court issued a Final Judgment in connection with its October 14, 2011 Order. See Deep Marine Holdings, et al. v. FLI Deep Marine, et al., Case No. 11-2926, Docket No. 5 (S.D. Texas, January 11, 2012), attached as Exhibit C to the Harrison Declaration. Thus, Plaintiffs are asking this Court to vacate the Texas District Court's Order adopting the Report and Recommendation of the Bankruptcy Court approving the claims in the Proposed Amended Complaint. As is set forth below, such request is improper, and Plaintiffs are not entitled to a declaratory judgment.[4]

A. **Plaintiffs' Request Violates the Principle of Comity**

Plaintiffs are not, in fact, asking this Court for a legitimate declaratory judgment; rather, Plaintiffs, who are unhappy with the Texas District Court's Order permitting the filing of FLI Deep Marine's direct claims against Plaintiffs, seek to have this Court overrule that court. Such request, if granted, would require this Court to

---

[4]     We note at the outset that there is no cause of action for declaratory judgment. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (McMahon, J.). Rather, a declaratory judgment is a form of remedy. See id. Moreover, the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202 (and not cited by Plaintiffs in their Amended Complaint) "does not create a source of substantive rights and imposes no duty upon the court to grant its remedy." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002) (Marrero, J.), aff'd., 346 F.3d 357 (2d Cir. 2003).

violate the longstanding principle of comity between courts.  See, e.g., United States v. Giovanelli, 807 F. Supp. 351, 354 (S.D.N.Y. 1992) (2d Cir. 1993) (Motley, J.), (stating, "Principles of comity between federal courts bar simultaneous litigation of the same matter in more than one federal district court") rev'd on other grounds, 998 F.2d 116 (2d Cir. 1993).  In Torquay Corp. v. Radio Corp. of Am., 2 F. Supp. 841 (S.D.N.Y. 1932) (Knox, J.)—a case strikingly similar to that at bar—this Court denied plaintiff's request for an injunction that would interfere with a consent decree entered in a related matter pending before the United States District Court for the District of Delaware:

> Assuming for the moment that this court has jurisdiction of the present suit, it is clear, as a matter of comity and of the orderly administration of justice, that this court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court.  Especially is this so where it is clear that the United States District Court in Delaware would have jurisdiction of such a suit as is now before this Court.  A bill to modify or restrain the enforcement of a decree of a federal court may undoubtedly be brought in the court which entered such decree.

Id., 2 F. Supp. at 844 (emphasis added).  The request by the plaintiff in Torquay Corp. for an injunction was similar to Plaintiffs' strategy here—namely, to assert what might appear to be a legitimate claim for equitable relief that, if granted, would result in one district court undoing the ruling of another district court.  The Torquay court flatly refused plaintiff's request; this Court should likewise reject Plaintiffs' tactics.

## B.  Plaintiffs Cannot Meet the Standard for Declaratory Relief

In addition, there is no justiciable issue here.  The Declaratory Judgment Act provides in relevant part, "*In a case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought."   28 U.S.C. § 2201(a) (2011) (emphasis added).   As is detailed below, Plaintiffs' "count" for declaratory judgment cannot make it past the first six words of the statute.

In Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364 (S.D.N.Y. 2009) (Robinson, J.), this Court articulated the essential elements of declaratory relief:

> Presence of a justiciable case or controversy is a *sine qua non* of federal judicial power; this requirement is not avoided by the procedural device of declaratory judgment, which itself requires an actual controversy . . . Federal courts have subject matter jurisdiction only over those suits that present 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'

Id., 626 F. Supp. 2d at 374 (citations omitted).   Here, there is no "justiciable case or controversy" underlying Plaintiffs' "count" for declaratory judgment.   The question of whether FLI Deep Marine LLC can file its complaint against Plaintiffs already has been decided by the Texas District Court.   There is therefore no "actual controversy."   28 U.S.C. § 2201(a) (2011).

Additionally, "[w]hether to exercise declaratory jurisdiction is within the court's broad discretion."   Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (McMahon, J.).   Even if comity did not apply, this Court would be required to consider whether declaratory relief would "(1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"   Id. (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)).   The Texas District Court has already "clarif[ied] and settle[d]" the legal relations between Plaintiffs and Defendants;   there is no "uncertainty, insecurity [or] controversy" concerning FLI

11

Deep Marine LLC's right to file its complaint—which is the sole basis of Plaintiffs' "count" for declaratory judgment.  Id.  Thus, Plaintiffs have failed to plead the elements required for this Court to determine whether it should exercise its discretion.  This Court should therefore dismiss Plaintiffs' "count" for declaratory judgment.

**POINT III**

**PLAINTIFFS HAVE NO CLAIM FOR ABUSE OF PROCESS**

In Count IV of the Second Amended Complaint, Plaintiffs allege that Defendants have abused the process of "***the court*** in a wrongful manner and in bad faith, through the filing of their various complaints ***in the Chancery Court of Delaware*** and the various issuances of wrongful discovery . . ."  (Second Amended Complaint ¶¶ 87, 88) (emphasis added).  Thus, Plaintiffs appear to complain to ***this Court*** about alleged abuse by Defendants of the process of ***the Delaware Chancery Court*** and the ***Texas Bankruptcy Court***.  Plaintiffs' baseless complaint about Defendants' supposed conduct in Delaware and Texas has no place in this Court.

The standard for stating an abuse of process claim requires that a plaintiff plead "(1) regularly issued process compelling the performance or foreclosure of some prescribed act; (2) an intent to do harm without excuse or justification; and (3) the person using the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process."  Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 79 (S.D.N.Y. 1995) (Leisure, J.). [5]  See also Sforza v.

---

[5]    Abuse of process is "a tort based on state law."  Estate of Keys v. Union Planters Bank, N.A., 578 F. Supp. 2d 629, 638 (S.D.N.Y. 2008) (Holwell, J.).  See also Feinman v. Bank of Delaware, 728 F. Supp. 1105, 1115 (D. Del. 1990) (applying Delaware state law to abuse of process claim).  Where an abuse of process claim concerns actions in another state, such other state's law should apply.  See, e.g., Vista Food Exch., Inc. v. Joyce Foods, Inc., No. 96 CIV. 0012 (MBM), 1996 WL 122419, *4 (S.D.N.Y. Mar. 20, 1996) (Mukasey, J.).

City of New York, No. 07 Civ. 6122 (DLC), 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009) (Cote, J.) (stating that a malicious motive alone does not give rise to a cause of action for abuse of process); Reilly v. Natwest Mkts. Group, Inc., 178 F. Supp. 2d 420, 430 (S.D.N.Y. 2001) (Sprizzo, J.); Jacques v. DiMarzio, Inc., 216 F. Supp. 2d 139, 142 (E.D.N.Y. 2002).[6]  This Court noted that the heart of an abuse of process claim "'lies in the use of the process to gain a collateral objective, the accomplishment of which the process in question was not intended to secure.'"  Sforza, 2009 WL 857496 at *17 (quoting Pagliarulo v. Pagliarulo, 30 A.D.2d 840, 293 N.Y.S.2d 13, 15 (2d Dep't 1968)).

A.  **Commencing Litigation Is Not An Abuse of Process**

This Court has repeatedly held that the mere commencement of litigation cannot support a claim for abuse of process—even where multiple lawsuits are filed – because a complaint is not "process" for purposes of the cause of action.  In Chrysler Corp. v. Fedders Corp., 540 F. Supp. 706 (S.D.N.Y. 1982) (Tenney, J.), this Court dismissed a claim for abuse of process predicated on a multiplicity of lawsuits in several jurisdictions that were allegedly instituted "to harass and defame [defendant], to impose excessive litigation costs on the defendant, and to coerce [defendant] into relinquishing its legitimate contract rights."  540 F. Supp. at 726-27.  This Court rejected outright the claims for damages based upon harassment and defamation and for defense costs.  Id. at 727.  This Court further held that the mere allegation of a multiplicity of lawsuits instituted—namely, "'seven summonses in five jurisdictions'"—did not change the legal principle that summonses and complaints are not process for the purposes of an abuse

_____

[6]     The elements of an abuse of process claim under Delaware law are virtually identical to those under New York law.  See Feinman v. Bank of Delaware, 728 F. Supp. 1105, 1115 (D. Del.), aff'd, 909 F.2d 1475 (3d Cir. 1990).
.

of process claim.  Id. at 730.  See also  Riddell Sports Inc. v. Brooks, 872 F. Supp. 73,

79 (S.D.N.Y. 1995) (Leisure, J.).  Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984) (holding

that the institution of a civil action by summons and complaint is not legally considered

process capable of being abused").

      Here, the primary "process" alleged by Plaintiffs to have been abused by

Defendants – "the filing of their various complaints in the Chancery Court of Delaware."

(Second Amended Complaint ¶ 87) – cannot support an abuse of process claim.[7]

**B.**    **Engaging in Legitimate Discovery Is Not An Abuse of Process**

      Plaintiffs' secondary basis for their purported claim for abuse of process is

Defendants' lawful exercise of their right to take legitimate discovery of Plaintiffs in both

the Delaware Chancery Court action and the Texas Bankruptcy Court adversary

proceeding.  Concerning the Delaware Chancery Court action, Plaintiffs allege that

"Defendants issued voluminous harassing, oppressive, irrelevant, and otherwise

abusive discovery requests to Plaintiffs."  (Second Amended Complaint ¶ 58).

Regarding the Texas Bankruptcy Court adversary proceeding, Plaintiffs allege that

"Defendants engaged in wrongful and harassing merits based discovery, including the

issuance of dozens of merit based document requests and merit based depositions

being conducted in Chicago, Houston, and New Orleans."  (Second Amended

Complaint ¶ 63).  Plaintiffs further allege that this latter "abuse of process" by

Defendants "forced . . . Plaintiffs to needlessly expend thousands of dollars in working

with clients to determine if responsive documents existed, reviewing potentially

---

[7]    Delaware law is in accord.  See Unit, Inc. v. Kentucky Fried Chicken Corp., 304 A.2d 320, 332
(Del. Super. Ct. 1973), (holding that "the mere filing of a lawsuit, even with bad intentions, is not sufficient
to prove abuse of process") overruled on other grounds, Mann v. Oppenheimer & Co., 517 A.2d 1056
(Del. 1986).

responsive documents, preparing witnesses, and attending depositions."   (Second Amended Complaint ¶ 63).   Thus, Plaintiffs complain (absurdly) that because they had to respond to requests for documents and provide testimony, Defendants should be held liable for abuse of process.   Engaging in legitimate discovery, however, cannot form the basis for a claim for abuse of process.

This Court has held that to prevail on a claim for abuse of process arising out of the issuance of a subpoena for a deposition, a plaintiff "must allege and show that the subpoena was issued not to obtain material and necessary testimony but to achieve the collateral objective of exerting economic pressure on the other party to the action." O'Brien v. Alexander, 898 F. Supp. 162, 168 (S.D.N.Y. 1995) (Chin, J.), aff'd in part, vacated on other grounds, 101 F.3d 1479 (2d Cir. 1996).   This Court has further held that a plaintiff must show the subpoena was issued "without excuse or justification."   Id. See also Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 38 N. Y. 2d 397, 403 (1975) (stating that "the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification").   Moreover, allegations that a subpoena is issued to "abuse and harass" a party are insufficient to state a claim for abuse of process because "'[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'"   Id. (quoting Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)) (alteration in original).   According to this Court, the key element to an abuse of process claim is "the misuse of process after it was issued."   Id. (emphasis added).   In O'Brien, this Court held that "allegations that plaintiff was subjected to three days of deposition, purportedly resulting in lost compensation and

general damages to his career and reputation" were insufficient as a matter of law to state an abuse of process claim.  Id.  See also Ann-Margret v. High Soc'y Magazine, Inc., 498 F. Supp. 401, 407 (S.D.N.Y. 1980) (Goettel, J.) (stating that "loss of business, injury to reputation, or expense arising from the litigation [cannot] constitute the type of interference with person or property necessary to sustain an abuse of process claim").

In the leading New York case on abuse of process claims, the New York Court of Appeals held that such a claim existed where a teachers' union issued subpoenas to 87 teachers to appear on the same day at an administrative hearing and refused to stagger their appearances, thereby forcing the school district to hire 77 substitute teachers to avoid having to shut down the school.   Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 38 N.Y. 2d 397, 404 (1975).

As was noted above, the legal standard—as articulated by this Court and the New York Court of Appeals—is that the process must be "without excuse or justification."  O'Brien, 898 F. Supp. at 168.  See also, e.g., Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, No. 06-cv-1260 (KAM), 2009 WL 4547792, *8 (E.D.N.Y. Dec. 1, 2009) (dismissing abuse of process claims where defendants failed to allege that "discovery requests were unrelated to the issues raised in the litigation"). Plaintiffs have not properly pleaded the elements of abuse of process under New York or Delaware law, much less alleged any facts that would meet the standard to survive a motion to dismiss.  Moreover, Plaintiffs have failed to allege that the discovery was not related to the litigation in the Delaware Chancery court and the Texas Bankruptcy Court. Accordingly, Plaintiffs' abuse of process claim should be dismissed in its entirety.

**POINT IV**

**PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER RICO**

Plaintiffs allege, in utter conclusory fashion, that Defendants represent a criminal enterprise that "conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c)." (Second Amended Complaint ¶ 98).

Section 1962(c) states that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a claim for damages under Section 1962(c), a "plaintiff must allege that the defendant participated in an enterprise which engaged in a pattern of racketeering activity, through the commission of two or more acts, the activities of which affected interstate commerce." Allstate Ins. Co. v. Bogoraz, No. 10–CV–5286 (SJF) (ETB), 2011 WL 2421045, *4 (E.D.N.Y. June 10, 2011). See also 18 U.S.C. § 1962(c); DeFalco v. Bernas, 244 F.3d 286, 305-06 (2d Cir. 2001).

Plaintiffs have not properly pleaded any of the elements of the Section 1962(c) claim. This failure requires dismissal of that claim.

**A. Defendants Are Not An Enterprise**

Plaintiffs plead, "on information and belief," that Defendants and Paul McKim "were an 'enterprise' as defined in 18 U.S.C. § 1961(4), in that they were 'a group of individuals associated in fact.'" (Second Amended Complaint ¶ 94). Plaintiffs'

17

pleading – which names McKim as part of the "enterprise" even though Plaintiffs have not named McKim as a Defendant – does nothing more than restate the legal standard for an 'enterprise' and does not try to meet the pleading standard required to sustain a RICO claim.

To satisfy the pleading standard required by Iqbal, Plaintiffs' "allegations must establish the existence of the enterprise not by pleading conclusions of fact, but by pleading factual allegations plausibly leading to these conclusions." Technology in Partnership, Inc. v. Rudin, No. 10 Civ. 8076 (RPP), 2011 WL 4575237, *4 (S.D.N.Y. Oct. 4, 2011) (Patterson, Jr., J.).  Plaintiffs have not pleaded any factual allegations regarding the existence of a RICO enterprise.[8]   Plaintiffs have made no factual allegations showing that the six individual Defendants – and McKim – functioned as a continuing unit.  Without such facts, Plaintiffs' conclusory allegations do not meet the pleading standards of Iqbal.

## B. Plaintiffs Have Not Properly Pleaded Defendants' Alleged "Racketeering Activity"

A RICO claim requires allegations of a "pattern of racketeering activity." 18 U.S.C. 1962(c).  "Racketeering activity" is defined in § 1961(1) to include a litany of criminal offenses, including, for purposes of the Second Amended Complaint, "any act which is indictable under . . . title 18, United States Code . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) . . . [and] section 1951 (relating to

---

[8]      Section 1961(4) defines a RICO enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct' which is 'proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" DeSilva v. North Shore-Long Island Jewish Health System, Inc., 770 F. Supp. 2d 497, 528 (E.D.N.Y. 2011) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)); First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).

interference with commerce, robbery, or extortion)." 18 U.S.C. 1961(1).  Plaintiffs have not alleged facts sufficient for the Court to find that Defendants have engaged in "racketeering activity"; the Court must therefore dismiss Plaintiffs' RICO claim.

### 1.  Plaintiffs Have Not Properly Pleaded a Mail Fraud Claim

Plaintiffs have alleged that Defendants committed mail fraud by "sending interstate facsimiles and letters through the United States mail containing inflammatory allegations regarding Plaintiffs, including for example, the October 10, 2008 demand letter and the afore-mentioned complaints."  (Second Amended Complaint ¶ 99).  Even assuming the truth of Plaintiffs' allegations for purposes of this Motion, Plaintiffs have not met their burden for pleading a mail fraud claim.

The elements of mail fraud claim are "(1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." Allstate Ins. Co, 2011 WL 2421045 at *4 (quoting Porcelli v. United States, 404 F.3d 157, 162 (2d Cir. 2005)).  "The 'gravamen' of the mail fraud offense is the "scheme to defraud." Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010) aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq., 11-149-CV, 2011 WL 4839089 (2d Cir. Oct. 13, 2011).

As is the case in other instances where a plaintiff alleges fraud, when a plaintiff alleges fraudulent activities as a RICO predicate act, the plaintiff must plead the fraud with particularity.  Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); DeSilva, 770 F. Supp. 2d at 526; Moore v. PaineWebber, Inc., 189 F.3d 165, 172–73 (2d Cir. 1999).  As the Second Circuit has noted, "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." Decker v. Massey–Ferguson Ltd.,

681 F.2d 111, 114 (2d Cir. 1982); See also Karagozian v. Coty US, LLC, No. 10 Civ. 5482 (RMB), 2011 WL 536423, *4 (S.D.N.Y. Feb. 10, 2011) (Berman, J.).

In order to meet the standards of Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." DeSilva, 770 F. Supp. 2d at 526 (quoting Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).  See also Karagozian v. Coty US, LLC, 2011 WL 536423 at *2 (complaint did not state a RICO claim because it failed to plead with particularity the specific statements which were made, how they were false, and when they were made and sent).

Plaintiffs have not met their burden to plead mail fraud with particularity in compliance with Rule 9(b).  Even if Plaintiffs' allegations are true, they do not amount to an attempt to defraud Plaintiffs, but rather, at most, an attempt to injure Plaintiffs through "inflammatory allegations." (Second Amended Complaint ¶ 99).  "Intent to injure is not the equivalent of intent to defraud." Kimm v. Lee, 04 CIV. 5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) (Baer, J.), aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc., 196 F. App'x 14 (2d Cir. 2006) (quoting Kredietbank, N.V. v. Joyce Morris, Inc., Civ. A. No. 84–1903, 1986 WL 5926, at *4 (D.N.J. Jan. 9, 1986), aff'd, 808 F.2d 1516 (3d Cir. 1986)).

Plaintiffs have not alleged any specific statement allegedly made by Defendants was fraudulent, nor have Plaintiffs explained why any alleged statement was fraudulent.  Finally, Plaintiffs have not made any allegations showing a scheme to defraud Plaintiffs.

Furthermore, litigation activities cannot properly form the basis for RICO predicate acts. See, e.g., Weaver v. James, No. 10 Civ. 6609 (NRB), 2011 WL 4472062, *4 (S.D.N.Y. Sept. 27, 2011) (Buchwald, J.) ("[a]ttempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been . . . rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation"); Gunn v. Palmieri, No. 87 CV 1418, 1989 WL 119519, *1 (E.D.N.Y. Sept. 29, 1989), aff'd, 904 F.2d 33 (2d Cir. 1990), cert. denied, 498 U.S. 1049 (1991) (rejecting "untenable" interpretation of RICO which would permit litigation activities to be construed as RICO predicate acts).  Thus, the "afore-mentioned complaints" that Plaintiffs contend constitute mail fraud (Second Amended Complaint ¶ 99) – presumably the two complaints filed by Defendants in the Chancery Court for the State of Delaware – fail because such complaints cannot be the basis of a RICO claim.

### 2. **Plaintiffs Have Not Properly Pleaded a Wire Fraud Claim**

Plaintiffs' allegations regarding wire fraud fail for the same reason as Plaintiffs' allegations regarding mail fraud.

In order to assert a claim for wire fraud, Plaintiffs must allege that Defendants "caused a wire communication to be transmitted for the purpose of executing [the] scheme to defraud." Carr v. Equistar Offshore, Ltd., No. 94 Civ. 5567 (DLC), 1995 WL 562178, 11 (S.D.N.Y. Sept. 21, 1995) (Cote, J.) (quoting United States v. Rogers, 9 F. 3d 1025, 1030 (2d Cir.1993), cert. denied, 115 S. Ct. 95 (1994)).  As in the case of mail fraud, a wire fraud claim must be pleaded with the particularity required by Fed. R. Civ. P. 9(b).  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008).  Similar to the mail fraud claims, allegations of predicate wire fraud acts "should state the contents of the communications, who was involved, [and] where and

when they took place, and [should] explain why they were fraudulent." Id. (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)).

The only alleged wire fraud for which Plaintiffs provide any details is the October 10, 2008 demand letter sent by Defendants to Plaintiffs.  (Second Amended Complaint ¶ 100).  Yet even with regard to the demand letter – a litigation activity that in any event cannot form the basis of a RICO predicate act, as discussed above – Plaintiffs fail to explain how the statements in the demand letter are fraudulent.  "False and inflammatory allegations" (Second Amended Complaint ¶ 100) are not necessarily fraudulent.  The other "extortionate threats via telephone" cited by Plaintiffs as the predicate acts of the wire fraud allegations come with no details regarding (a) the party making the alleged threats, (b) the party on the receiving end of the threats, (c) when such threatening phone calls allegedly took place, or (d) why the communications were fraudulent.  Plaintiffs also do not specify which Defendant(s) perpetrated the supposed "fraud."  See DeSilva, 770 F. Supp. 2d at 526 (finding that plaintiff did not meet his burden under RICO or 9(b) because he failed to identify which defendants caused each allegedly fraudulent statement to be spoken, written, or mailed).

Because Plaintiffs have failed to allege facts to support the predicate act of wire fraud, the Court must dismiss Plaintiffs' RICO claims.

### 3. **Plaintiffs Have Not Properly Pleaded Extortion**

Plaintiffs allege that Defendants committed extortion in violation of 18 U.S.C. § 1951 by "the pattern of racketeering-involved schemes to extort money from Plaintiffs through the use of a demand letter and frivolous lawsuits intermixed with false allegations . . . coupled with the dissemination of these false allegations to the press all designed to harass, embarrass and otherwise cause injury to Plaintiffs."  (Second

Amended Complaint ¶ 101).  Even assuming the truth of Plaintiffs' allegations, Plaintiffs have not properly pleaded the RICO predicate act of extortion.

The Hobbs Act, of which 18 U.S.C. § 1951 is a part, "was enacted to address something significantly more violent and sinister" than the facts alleged by Plaintiffs.  See Kimm v. Lee, 2005 WL 89386 at *6.  Pursuant to 18 U.S.C. § 1951, "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  Where a complaint fails "to allege any threat of force, violence, or fear . . . the alleged conduct falls significantly short of Hobbs Act extortion." Id.  See also Park South Assocs. v. Fischbein, et al., 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986) (Knapp, J.) (dismissing complaint where plaintiff did not allege force or violence).

Harassing a party, embarrassing a party, or otherwise causing injury to a party – the only alleged "predicate acts" of Defendants' alleged extortion cited by Plaintiffs (Second Amended Complaint ¶ 101) – may be actionable under state law, but do not constitute "threatened force, violence, or fear," and are not predicate acts for RICO claims.   Conte v. Newsday, Inc. 703 F. Supp. 2d 126, 137 (E.D.N.Y. 2010)(threats to defame are insufficient for a RICO claim); Leogrande v. Leogrande, 799 F. Supp. 1354, 1362 (E.D.N.Y. 1992)(threats of litigation do not constitute inducement of "fear" under the Hobbs Act).

## C. **Plaintiffs Have Not Properly Pleaded a Pattern of Racketeering**

In order to plead a RICO claim properly, Plaintiffs must also plead a "pattern of racketeering activity." 18 U.S.C. 1962(c).  Even if Plaintiffs had pleaded the predicate acts of mail fraud, wire fraud, and extortion, Plaintiffs' Amended Complaint

would be subject to dismissal because it fails to plead a cognizable pattern of racketeering activity.

"In passing RICO, Congress was concerned with 'long-term criminal conduct.'" Annodeus, Inc. v. Ciarkowski, 04 Civ.1633 DLC, 2004 WL 2066937, *3 (S.D.N.Y. Sept. 16, 2004) (Cote, J.) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989)).  Therefore, pursuant to § 1961(5), a

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. 1961(5).  Although § 1961(5) requires a minimum of two acts of racketeering activity, two acts are not always sufficient to demonstrate a pattern of racketeering activity. DeFalco, 244 F.3d at 306.  In order to meet the requirements for a "pattern" of activity, Defendants' conduct must pose a threat of continued criminal activity:

> a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time).

Levine v. Torino Jewelers, Ltd., No. 05 Civ. 3159 (DLC), 2006 WL 709098, *5 (S.D.N.Y. March 22, 2006) (Cote, J.); (quoting GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)).  The point of the continuity requirement is not to bind a court to a rigid formula, but to ensure that there is a basis for concluding that "defendants' activities were neither isolated nor sporadic." Id. (quoting GICC Capital Corp., 67 F.3d at 467).

Plaintiffs' allegations amount to two complaints filed with the Delaware Chancery Court, a copy of the demand letter allegedly sent to a newspaper by an

24

unknown person, and certain unspecified phone calls.   The notion that these alleged acts constitute a pattern of racketeering activity showing long term criminal conduct that poses a threat of continuing would be laughable if the allegations were not so serious, and the expense to defend against such scurrilous allegations so great.   In fact, as numerous courts have recognized, the insufficiency of Plaintiffs' frivolous RICO charges constitutes a violation of Rule 11.   See, e.g., Edmonds v. Seavey, No. 08 Civ. 5646 (HB), 2009 WL 4404815, *4 (S.D.N.Y. Dec. 2, 2009) (Baer, Jr., J.)(courts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) (Sweet, J.) (imposing Rule 11 sanctions where plaintiff "manifestly failed to meet even the most rudimentary requirements of any of the four distinct subsections of a § 1962 RICO claim").

## Conclusion

Plaintiffs, in their Amended Complaint, have shown their true colors. Plaintiffs have attempted to undo and avoid the Order of the Texas District Court and have smeared and maligned Defendants and the innocent bystander First Long Island Investors with their meritless RICO claims.   Plaintiffs have also tried to deflect from their own wrongdoing by accusing Defendants of abuse of process, while abusing the bankruptcy stay by using it as a shield and a sword.   Plaintiffs' judicially-recognized "slick" maneuvers should, we respectfully submit, be rejected.

For the reasons set forth above, Defendants' request that their motion to dismiss (i) all Counts of the Amended Complaint as to First Long Island Investors, LLC; and (ii) Counts I, IV and V of the Amended Complaint as to all defendants, be granted.

Dated:  New York, New York
        January 13, 2012

PADUANO & WEINTRAUB LLP


By: /s/ Katherine B. Harrison
        Anthony Paduano
        Katherine B. Harrison
        Willard R. Knox
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
ap@pwlawyers.com
kh@pwlawyers.com
wk@pwlawyers.com

Attorneys for Defendants