UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NJK HOLDINGS CORP., DCC VENTURES, LLC, NASSER J. KAZEMINY, and THE TRIOMPHE INVESTORS, LLC | No.: 11-cv-6946 (DLC) |
| Plaintiffs, | |
| vs. | |
| FIRST LONG ISLAND INVESTORS, LLC, FLI DEEP MARINE LLC, BRESSNER PARTNERS LTD., LOGAN LANGBERG, HARLEY LANGBERG, and JEFFREY LANGBERG | **PLAINTIFFS' ANSWER TO DEFENDANTS' COUNTERCLAIMS** |
| Defendants and Counterclaimants, | |
| Vs. | |
| NJK HOLDINGS CORP., DCC VENTURES, LLC, NASSER J. KAZEMINY, THE TRIOMPHE INVESTORS, LLC, NADER KAZEMINY, OTTO CANDIES, JR., OTTO CANDIES, III, OTTO CANDIES, LLC, JOSEPH J. GRANO, JR. and CENTURION HOLDINGS, LLC, | |
| Counterclaim Defendants. | |

Plaintiffs NJK Holdings Corp., DCC Ventures, LLC, Nasser J. Kazeminy, The Triomphe

Investors, LLC (collectively "Plaintiffs"), pursuant to the provisions of the Federal Rules of Civil

Procedure, make the following answer to each and every claim and averment in the

Counterclaims of First Long Island Investors, LLC, FLI Deep Marine LLC, Bressner Partners

Ltd., Logan Langberg, Harley Langberg, and Jeffrey Langberg (collectively "Defendants"):

## NATURE OF THE ACTION

Plaintiffs deny each and every allegation, matter and thing alleged in Defendants' Counterclaims, unless hereinafter specifically admitted or otherwise qualified.

1.      Admitted.

2.      Denied.

3.      Denied.

4.      Denied.

5.      Denied.

6.      Admitted that DMT was a subsea service provider to offshore and oil industries and that it enjoyed periods of success and a strong upward path of growth prior to Defendants' wrongful conduct forcing the company to file for bankruptcy.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 6 of Defendants' Counterclaims and therefore deny the same.

7.      Admitted that DMT underwent a short form merger pursuant to Delaware law on July 1, 2009 and that DMT's SLC concluded that there was no evidence that Plaintiffs or the Candies had or were engaged in any wrongdoing and that Defendants' allegations were meritless.  Plaintiffs deny all remaining allegations contained in paragraph 7 of Defendants' Counterclaims.

8.      Denied.

9.      Admitted that the FLI Parties filed a lawsuit in the Delaware Chancery Court in October of 2009 and that the Delaware Chancery Court granted expedited discovery on November 2, 2009.  Admitted that DMT filed for bankruptcy on December 3, 2009 and upon the filing the bankruptcy, the FLI Parties' Delaware Action was stayed.  Plaintiffs deny the remaining allegations contained in paragraph 9 of Defendants' Counterclaims.

10.     Denied.

11.     Denied.

## THE PARTIES

12.     Admitted that FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg were minority shareholders in DMT until July 1, 2009.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 12 of Defendants' Counterclaims and therefore deny the same.

13.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 13 of Defendants' Counterclaims and therefore deny the same.

14.     Admitted.

15.     Admitted that NJK Holdings is owned or controlled by Nasser Kazeminy. Admitted that Nasser Kazeminy also owns or controls DCC Ventures, LLC, which was another former shareholder of DMT.  Plaintiffs deny the remaining allegations contained in paragraph 15 of Defendants' Counterclaims.

16.     Admitted that The Triomphe Investors, LLC is a Nevada limited liability company with its principal office at 3960 Howard Hughes Parkway, Las Vegas, Nevada 89109. Admitted that on April 9, 2008, Triomphe purchased the majority of Grano's DMT shares at a price that imputed a value of $100 million for DMT.  Plaintiffs deny the remaining allegations contained in paragraph 16 of Defendants' Counterclaims.

17.     Admitted that Triomphe is the entity that purchased the Grano Defendants' DMT stock.  Admitted that Nader Kazeminy signed the letter setting forth the agreement between Triomphe and Grano.  Plaintiffs deny the remaining allegations contained in paragraph 17 of Defendants' Counterclaims.

18.     Admitted that the Candies were shareholders in DMT.   Plaintiffs deny the remaining allegations contained in paragraph 18 of Defendants' Counterclaims.

19.     Admitted that Candies, III was previously a member of DMT's board of directors. Plaintiffs are without sufficient information and/or knowledge as to Candies, III's position with Candies, LLC and who owns and controls Candies, LLC.   Plaintiffs deny the remaining allegations contained in paragraph 19 of Defendants' Counterclaims.

20.     Plaintiffs are without sufficient information and/or knowledge regarding the allegations contained in paragraph 20 of Defendants' Counterclaims and therefore deny the same.

21.     Plaintiffs admit the first sentence and deny the second sentence of paragraph 21 of Defendants' Counterclaims.

22.     Admitted.

23.     Denied.

24.     Admitted.

25.     Plaintiffs affirmatively aver that Grano, individually or through Centurion, was an early investor in DMT.   To the extent the allegations found in paragraph 25 of Defendants' Counterclaims conflict with the foregoing, Plaintiffs deny the same.

26.     Plaintiffs are without sufficient information and/or knowledge as to whether DMT board meetings were ever held in Grano's Centurion offices or that Grano served as Chairman of DMT's Advisory Board and therefore deny the same.   Plaintiffs deny the remaining allegations contained in paragraph 26 of Defendants' Counterclaims.

27.     Plaintiffs deny that Nasser Kazeminy was hostile to the FLI Parties' interests. Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining

allegations contained in paragraph 27 of Defendants' Counterclaims and therefore deny the same.

## JURISDICTION AND VENUE

28.     Admitted.

29.     Admitted.

## FACTUAL ALLEGATIONS

30.     Admitted.

31.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 31 of Defendants' Counterclaims and therefore deny the same.

32.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 32 of Defendants' Counterclaims and therefore deny the same.

33.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 33 of Defendants' Counterclaims and therefore deny the same.

34.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 34 of Defendants' Counterclaims and therefore deny the same.

35.     Admitted that in 2004 Grano introduced Nasser Kazeminy to DMT.  Plaintiffs deny the remaining allegations contained in paragraph 35 of Defendants' Counterclaims.

36.     Denied that Nasser Kazeminy decided to take over DMT.  Plaintiffs admit the remaining allegations contained in paragraph 36 of Defendants' Counterclaims.

37.     Denied that Nasser Kazeminy and his entities exercised control of DMT's business affairs.  Denied that Grano was given access and received regular updates as to DMT's operations from Nasser Kazeminy.   Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 37 of Defendants' Counterclaims and therefore deny the same.

38.     Admitted that in April 2008, Triomphe purchased the bulk of Grano's DMT stock based on a valuation of $100 million.  Denied that there were any "specific intentions," "secret deal," "wrongful scheme," or any thought whatsoever of the Merger in 2008 and therefore deny that Grano could have known of the same in 2008.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 38 of Defendants' Counterclaims and therefore deny the same.

39.     Admit that Nasser Kazeminy made an initial investment in DMT in 2004 and increased his ownership interest in DMT from 2004 through 2006.  Plaintiffs deny all remaining allegations found in paragraph 39 of Defendants' Counterclaims.

40.     Admit and affirmatively aver that on or about July 5, 2005 Nasser Kazeminy converted to equity $600,000 worth of certain DMT bonds he owned at a conversion price of $393.80 per share, which resulted in Nasser Kazeminy receiving 13.92% of DMT's stock. Plaintiffs deny all remaining allegations found in paragraph 40 of Defendants' Counterclaims.

41.     Denied that Nasser Kazeminy completely dominated DMT and that Nasser Kazeminy hid any domination from Defendants. Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 41 of Defendants' Counterclaims and therefore deny the same.

42.     Denied that Nasser or Nader Kazeminy were involved in any conspiracy to dilute Defendants, oppress Defendants, or ultimately squeeze the Defendants out of their stock in DMT.  Admitted that the FLI Parties were issued 901 DMT shares at $393.80 per share (the exact same price that Nasser Kazeminy exercised his warrant) and, thus, admit that FLI was not damaged or diluted at all by Nasser Kazeminy's exercise of his warrants.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 42 of Defendants' Counterclaims and therefore deny the same.

43.     Admitted.

44.     Denied.

45.     Denied that the OSA gave Nasser Kazeminy complete control over DMT's day-to-day operations.   Admitted as to the remaining allegations contained in paragraph 45 of Defendants' Counterclaims.

46.     Paragraph 46 of Defendants' Counterclaims states a legal conclusion to which no response is required.   To the extent a substantive response is required, Plaintiffs deny the allegations found in paragraph 46 of Defendants' Counterclaims.

47.     Denied that Nasser Kazeminy achieved total domination of DMT through the OSA and therefore deny all remaining allegations found in paragraph 47 of Defendants' Counterclaims.

48.     Denied that Nasser Kazeminy achieved total control and domination of DMT, was scheming to dilute DMT's minority shareholders in order to take control of DMT without paying any controlling premium for the minority shareholders' shares, that the minority shareholders were entitled to a control premium and therefore deny that Grano could have any knowledge of

the same.   Therefore Plaintiffs deny the allegations found in paragraph 48 of Defendants'
Counterclaims.

49.     Plaintiffs are without sufficient information and/or knowledge to admit or deny
the allegations contained in paragraph 49 of Defendants' Counterclaims and therefore deny the
same.

50.     Plaintiffs are without sufficient information and/or knowledge to admit or deny
the allegations contained in paragraph 50 of Defendants' Counterclaims and therefore deny the
same.

51.     Plaintiffs are without sufficient information and/or knowledge to admit or deny
the allegations contained in paragraph 51 of Defendants' Counterclaims and therefore deny the
same.

52.     Plaintiffs are without sufficient information and/or knowledge to admit or deny
the allegations contained in paragraph 52 of Defendants' Counterclaims and therefore deny the
same.

53.     Plaintiffs are without sufficient information and/or knowledge to admit or deny
the allegations contained in paragraph 53 of Defendants' Counterclaims and therefore deny the
same.

54.     Denied that Nasser Kazeminy increased the share of stock he owned in any way
through the transactions between DMT and the Candies.   Plaintiffs are without sufficient
information and/or knowledge to admit or deny the remaining allegations contained in paragraph
54 of Defendants' Counterclaims and therefore deny the same.

55.     Denied.

56.     Denied.

57.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 57 of Defendants' Counterclaims and therefore deny the same.

58.     Denied as to the allegations contained in footnote no. 4.  Denied that the Special Litigation Committee was "bogus."  Denied that Nasser Kazeminy "installed" Gilman as CEO. Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 58 of Defendants' Counterclaims and therefore deny the same.

59.     Denied that Plaintiffs were parties to any mismanagement or self-dealing. Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 59 of Defendants' Counterclaims and therefore deny the same.

60.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 60 of Defendants' Counterclaims and therefore deny the same.

61.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 61 of Defendants' Counterclaims and therefore deny the same.

62.     Denied.

63.     Denied that Nader Kazeminy agreed to purchase any of Grano's DMT shares for any amount.  Plaintiffs admit the remaining allegations contained in paragraph 63 of Defendants' Counterclaims.

64.     Denied.

65.     Denied that there was any "secret deal" between Grano and Nasser Kazeminy and, thus, deny all allegations found in paragraph 65 of Defendants' Counterclaims.

66.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 66 of Defendants' Counterclaims and therefore deny the same.

67.     Admitted that Triomphe's purchase of Joe Grano's stock gave Plaintiffs and the Candies enough stock in DMT to effectuate a legal short-form merger pursuant to Delaware law. Plaintiffs deny the remaining allegations contained in paragraph 67 of Defendants' Counterclaims.

68.     Admitted that Grano's sale of his stock to Triomphe resulted in Plaintiffs and the Candies controlling at least 90% of DMT's outstanding equity.  Plaintiffs deny the remaining allegations contained in paragraph 68 of Defendants' Counterclaims.

69.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 69 of Defendants' Counterclaims and therefore deny the same.

70.     Admitted that Nasser Kazeminy and the Candies owned 90% of DMT's outstanding equity prior to consummating the Merger.  Plaintiffs deny the remaining allegations contained in paragraph 70 of Defendants' Counterclaims.

71.     Admitted that DMT consummated a short form merger pursuant to Delaware law on July 1, 2009.  Plaintiffs deny the remaining allegations contained in paragraph 71 of Defendants' Counterclaims.

72.     Admitted that on July 11, 2009 the FLI Parties were notified that on July 1, 2009 DMT and NKOC, Inc. had executed a short form merger pursuant to Delaware law and that

Exhibit C constitutes the notice provided to minority shareholders.  Admitted that the FLI Parties, as minority shareholders, would be cashed out at a price of $0.01 per share, or approximately $22,000 for all minority shareholders.  Admitted that the FLI Parties have not recovered $11,290.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 72 of Defendants' Counterclaims and therefore deny the same.

73.     Admitted that the FLI Parties had the right under Delaware law to an appraisal of the value of the shares in an appraisal action in the Delaware Court of Chancery.  Plaintiffs deny the remaining allegations contained in paragraph 73 of Defendants' Counterclaims.

74.     Admitted.

75.     Denied that the June 13, 2011 Texas Bankruptcy Court's Memorandum Opinion permitted the FLI Parties to pursue certain claims arising out of allegations of equity dilution, expropriation of economic value, and oppression of minority shareholders.  Plaintiffs admit the remaining allegations contained in paragraph 75 of Defendants' Counterclaims.

## COUNTERCLAIMS

## <u>FIRST CAUSE OF ACTION</u>

76.     No response is necessary to paragraph 76 of Defendants' Counterclaims.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 83 of Defendants' Counterclaims and therefore deny the same.

84.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 84 of Defendants' Counterclaims and therefore deny the same.

85.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 85 of Defendants' Counterclaims and therefore deny the same.

86.     Denied.

87.     Denied.

88.     Admitted.

89.     Denied.

90.     Denied.

**SECOND CAUSE OF ACTION**

91.     No response is necessary to paragraph 91 of Defendants' Counterclaims.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

**THIRD CAUSE OF ACTION**

98.     No response is necessary to paragraph 98 of Defendants' Counterclaims.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Admitted that on April 9, 2008, Triomphe purchased 1,595,000 of Grano's DMT shares for a purchase price of $6.5 million.  Admitted that such transaction was based on a valuation of approximately $100 million for all of DMT's equity.  To the extent the allegations found in paragraph 102 of Defendants' Counterclaims conflict with the foregoing, Plaintiffs deny the same.

103.    Denied that Grano had any secret deal with Triomphe.  Plaintiffs admit that as a result of Triomphe's purchase of Grano's shares, Plaintiffs and the Candies reached the 90% ownership threshold necessary to consummate a short form merger pursuant to Delaware law.

104.    Denied.

105.    Denied.

## FOURTH CAUSE OF ACTION

106.    No response is necessary to paragraph 106 of Defendants' Counterclaims.

107.    Paragraph 107 of Defendants' Counterclaims states a legal conclusion to which no response is required.  To the extent a substantive response is required, Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 107 of Defendants' Counterclaims and therefore deny the same.

108.    Paragraph 108 of Defendants' Counterclaims states a legal conclusion to which no response is required.  To the extent a substantive response is required, Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 108 of Defendants' Counterclaims and therefore deny the same.

109.     Paragraph 109 of Defendants' Counterclaims states a legal conclusion to which no response is required.  To the extent a substantive response is required, Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 109 of Defendants' Counterclaims and therefore deny the same.

110.     Paragraph 110 of Defendants' Counterclaims states a legal conclusion to which no response is required.  To the extent a substantive response is required, Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 110 of Defendants' Counterclaims and therefore deny the same.

111.     Denied.

112.     Denied.

113.     Denied.

114.     Denied.

## FIFTH CAUSE OF ACTION

115.     No response is necessary to paragraph 115 of Defendants' Counterclaims.

116.     Denied.

117.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 117 of Defendants' Counterclaims and therefore deny the same.

118.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 118 of Defendants' Counterclaims and therefore deny the same.

119.     Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 119 of Defendants' Counterclaims and therefore deny the same.

120.    Plaintiffs are without sufficient information and/or knowledge to admit or deny the allegations contained in paragraph 120 of Defendants' Counterclaims and therefore deny the same.

### SIXTH CAUSE OF ACTION

121.    No response is necessary to paragraph 121 of Defendants' Counterclaims.

122.    Denied.

123.    Denied.

124.    Admitted as to the allegations contained in the second sentence of paragraph 125 of Defendants' Counterclaims.  Plaintiffs are without sufficient information and/or knowledge to admit or deny the remaining allegations contained in paragraph 124 of Defendants' Counterclaims and therefore deny the same.

125.    Denied.

126.    Denied.

### SEVENTH CAUSE OF ACTION

127.    No response is necessary to paragraph 127 of Defendants' Counterclaims.

128.    Admitted.

129.    No response is necessary to paragraph 129 of Defendants' Counterclaims.

130.    Denied.

### AFFIRMATIVE DEFENSES

1.    Defendants have failed to state a claim upon which relief can be granted.

2.    Defendants' Counterclaims are barred by the doctrines of payment, unclean hands, waiver, estoppel, settlement and release, *res judicata*, collateral estoppel, claim preclusion, ratification, laches, and/or accord and satisfaction.

3.     Defendants do not have standing to pursue the causes of actions or allegations stated in their Counterclaims.

4.     Defendants' Counterclaims are barred because Defendants failed to suffer any damages and/or failed to mitigate their damages, if any.

5.     Pursuant to Federal Rule of Civil Procedure 15, and other applicable law, Plaintiffs reserve the right to amend their Answer and Affirmative Defenses to include any and all affirmative defenses that are not currently known to them, but which may be revealed to it during the course of discovery.

Dated:  February 3, 2012.

COLE SCHOTZ MEISEL
 FORMAN & LEONARD, P.A.
900 Third Avenue – 16th Floor
New York, New York 10022

-and-

25 Main Street – Court Plaza North
Hackensack, New Jersey 07601

By:  /s/ Jed Weiss
        Jed M. Weiss

WINTHROP & WEINSTINE, P.A.
Robert R. Weinstine (#115435)
Christianna L. Finnern (#310724)
Joseph M. Windler (#387758)

225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
Tel:   (612) 604-6400
Fax:  (612) 604-6800
Counsel for Plaintiffs